**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | | |
|---|---|---|
| **TAMEKA WARDLOW and** | ) | |
| **JASON LEGRONE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 11-2127-STA** |
| | ) | |
| **STATE FARM FIRE & CASUALTY** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

### ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Before the Court is Defendant State Farm Fire & Casualty Company's Motion for Partial Summary Judgment (D.E. # 8) filed on July 13, 2011. Plaintiffs Tameka Wardlow[1] and Jason Legrone filed a response in opposition to the Motion on August 28, 2011, and Defendant has filed a reply. For the reasons set forth below, the Motion is **GRANTED**.

### BACKGROUND

The following facts are not in dispute for purpose of this Motion unless otherwise noted.[2]

---

[1] The Court observes that some documents spell Ms. Wordlow's name "Wurdlow" and not "Wordlow." Because the Complaint spells her name "Wordlow" in its caption, the Court uses that spelling here.

[2] Plaintiffs have not properly disputed Defendant's statement of facts. Local Rule 56.1(b)(3) requires that where a non-moving party denies the moving party's assertion, the non-moving party must "demonstrate that the fact is disputed." Plaintiffs' brief simply states "Admitted" or "Denied" as to each of Defendant's assertions of fact. Plaintiffs have not demonstrated how the "denied" facts are actually in dispute. Therefore, the Court deems

On or about August 25, 2009, Plaintiffs suffered an alleged theft at their residence located at 9724 Riggin Drive, Arlington, Tennessee. (Am. Compl. ¶ 7.) On August 28, 2009, Plaintiffs reported the loss to State Farm at which time a personal property inventory form was sent to them with the explanation that documentation would be needed about the items claimed to have been stolen. (Thomas Aff. ¶¶ 3–4.) On September 3, 2009, Rob Thomas ("Thomas"), an employee of State Farm, went to Plaintiffs' residence to take photographs. (*Id.* ¶ 5.) At that time, he reviewed the personal property inventory form with Plaintiff Tameka Wordlow ("Wordlow"), who is the named insured on the policy, and advised her of the need for documentation. (*Id.*) On October 28, 2009, Thomas sent a follow up letter to Wordlow regarding the need for a sworn statement of proof of loss and the personal property inventory form. (*Id.* ¶ 6.) On February 10, 2010, Thomas sent a letter to Wordlow advising that documentation to substantiate the claim should be provided at the same time as the personal property inventory form. (*Id.* ¶ 9.)

On March 2, 2010, Plaintiffs submitted their personal property inventory form with only minimal documentation to support the claim. (*Id.* ¶ 10.)[3] By letter dated March 25, 2010, Thomas informed Wordlow that the personal property inventory form was received and that any further documentation should be submitted within thirty (30) days. (*Id.* ¶ 11.)[4] Pursuant to the terms of the

---

Defendant's version of the facts to be undisputed at this stage of the proceedings.

[3] Plaintiffs deny this statement but have failed to attach any evidentiary support to demonstrate how the fact is in dispute for purposes of summary judgment.

[4] Plaintiffs deny this statement but have failed to attach any evidentiary support to demonstrate how the fact is in dispute for purposes of summary judgment. Defendant has attached a copy of Thomas' March 25, 2010 letter and the Court finds that the letter indicates that Plaintiffs should submit further documentation within 30 days. As a result, the Court finds no evidentiary basis to dispute this fact.

policy, examinations under oath of Wordlow and Plaintiff Jason Legrone were taken on May 11, 2010, at which time Plaintiffs had been requested to present bank records and receipts for any items claimed in the personal property inventory form. (*Id.* ¶¶ 12–13.)[5]  These documents were not provided. (*Id.*)

On July 8, 2010, payment was issued for the amount of the claim which had been documented by Plaintiffs, totaling $3,057.26 after a $500.00 deductible was subtracted from the total amount. (*Id.* ¶ 15.)  Between July 8, 2010 and December 21, 2010, Thomas made further efforts to discuss and obtain documentation from Plaintiffs. (*Id.* ¶¶ 16–25.)[6]  Finally, after having received no such additional documentation, on December 21, 2010, Thomas sent a letter to Michael Campbell, attorney for Plaintiffs, explaining that requests were made for documentation to no avail. (*Id.* ¶ 26.)[7]

---

[5] Plaintiffs deny this statement but have failed to attach any evidentiary support to demonstrate how the fact is in dispute for purposes of summary judgment. In addition to the Thomas affidavit, Defendant has submitted a letter from attorney Russell Reviere addressed to Plaintiffs and dated April 22, 2010. Thomas Aff., ex. 6. The letter notified Plaintiffs of the time and place for taking the examinations under oath and requested "copies of monthly bank statements of any account maintained by you," "copies of income tax returns for the years 2007 and 2008 and, if filed, 2009," and other forms of additional documentation as to the stolen items. *Id.*

[6] Plaintiffs deny this statement but have failed to attach any evidentiary support to demonstrate how the fact is in dispute for purposes of summary judgment. Defendant has produced the Thomas affidavit as well as a letter Thomas addressed to counsel for Plaintiffs on December 21, 2010, in which Thomas refers to his last conversation with Plaintiffs' attorney on November 23, 2010. As a result, the Court finds no evidentiary basis to dispute this fact.

[7] Plaintiffs deny this statement "as to further request" but have failed to attach any evidentiary support to demonstrate how the fact is in dispute for purposes of summary judgment. Pl.'s Resp. 2 (D.E. # 11).

At no point did State Farm deny Plaintiffs' claim. (*Id.* ¶ 28).[8] At no point have Plaintiffs, or anyone acting on their behalf, made a demand for payment under the policy giving notice of their intent to seek the penalty available under Tennessee Code Annotated § 56–7–105. (*Id.* ¶ 27.)[9] The policy of insurance issued to Wordlow by Defendant states in part:

SECTION I – CONDITIONS

2. Your Duties After Loss. After a loss to which this insurance may apply, you shall see that the following duties are performed:
. . .
c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;
d. as often as we reasonably require:
. . .
    (2) provide us with records and documents we request and permit us to make copies
    . . .
(Certified Policy of Insurance.)

In its Motion for Partial Summary Judgment, Defendant asks the Court to dismiss Plaintiffs' claims for fraud/fraudulent misrepresentation, bad faith, estoppel, and violation of the Tennessee Consumer Protection Act ("TCPA"). Defendant argues that Plaintiffs cannot make out their claim of fraud/fraudulent misrepresentation because Plaintiffs cannot prove that Defendant misstated or misrepresented a material fact. With respect to Plaintiffs' claim for bad faith, Plaintiffs have failed to comply with the Tennessee statutory requirement for formal demand giving notice of Plaintiffs' intent to seek the statutory penalty. Defendant further contends that Plaintiffs have no proof that the

---

[8] Plaintiffs deny this statement but have failed to attach any evidentiary support to demonstrate how the fact is in dispute for purposes of summary judgment.

[9] Plaintiffs deny this statement but have failed to attach any evidentiary support to demonstrate how the fact is in dispute for purposes of summary judgment.

policy became due and payable because Plaintiffs failed to properly document their loss. Defendant denies that Plaintiff has adduced any evidence that Defendant acted in bad faith. Defendant next seeks summary judgment on Plaintiffs' claim for estoppel. Defendant asserts that the basis for this claim is simply Defendant's determination that Plaintiffs had not adequately documented all of their losses. Plaintiffs cannot prove that they were misled about the requirement for documentation. Finally, as for Plaintiffs' TCPA claim, Defendant argues that denial of an insurance claim, even if in error, does not rise to the level of a deceptive or misleading practice. Defendant maintains that it did not actually deny Plaintiffs' claim but would only pay losses that were properly substantiated. Therefore, the Court should grant Defendant judgment as a matter of law as to these claims.

Plaintiffs have responded in opposition to Defendant's summary judgment motion. Plaintiffs argue that Thomas's conduct forms the basis of their claims against Defendant. With respect to the allegations of fraud, Plaintiffs contend that they relied to their detriment on their contract for insurance with Defendant and on Thomas's statements that he did not require additional documentation. Plaintiffs further argue that Defendant misrepresented the time frame for the submission of Plaintiffs' claim, in one instance stating that Plaintiffs had six months to submit documentation and at another time one year. Thus, questions of fact remain as to this claim. Plaintiffs also argue that they can prove the elements of their claim for bad faith. Plaintiffs base their claim on Defendant's refusal to pay and on the conduct of Thomas who failed to keep appointments with Plaintiffs and insinuated that Plaintiffs' personal property was ill-gotten. Turning to their estoppel theory, Plaintiffs contend that they relied to their detriment on Defendant's contract to cover their losses and on Thomas' representation that no further documentation was needed to process their claim. Plaintiffs argue that they can prove their TCPA claims based on Thomas's conduct in

handling their claim, including inappropriate remarks Thomas made, misrepresentations about what Plaintiffs needed to produce in support of their claim, and his failure to keep appointments. Therefore, Plaintiffs ask the Court to deny Defendant's Motion.

In its reply Defendant argues that Plaintiffs have failed to comply with the Local Rules on responding to a moving party's statements of fact. Specifically, Defendant objects to the manner in which Plaintiffs have simply stated that certain assertions of fact are "Denied" without any citation to the record. Under the circumstances Defendant asks the Court to deem those facts admitted for failure to comply with the Local Rules. Defendant also objects to Plaintiffs' failure to recite their own version of facts in the form prescribed by the Local Rules. Plaintiffs have simply attached affidavits and other evidence to their response without providing an actual statement of facts based on the evidence. Defendant again requests that the Court not consider this evidence. As for the merits of Plaintiffs' claims, Defendant argues that Plaintiffs have not shown how they suffered any loss as a result of their reliance on Defendant's alleged misrepresentations about how Plaintiffs should submit their claim. Defendant contends that under the express terms of the policy, Plaintiffs had sixty days in which to produce their supporting documentation, and Plaintiffs failed to do so with respect to all of the items they claimed were stolen. Defendant emphasizes that Plaintiffs have not shown that they complied with Tennessee's statutory requirements for bringing a claim of bad faith. Defendant argues that Plaintiffs' estoppel theory is in reality a breach of contract claim. Furthermore, Defendant contends that Plaintiffs' insurance claim was never actually denied. Plaintiffs simply did not produce sufficient documentation for all of their losses. For these reasons Plaintiffs cannot show detrimental reliance. With respect to the TCPA, Plaintiffs have no proof that Defendant ever misrepresented any facts to them or that their claim was denied. Defendant simply

adhered to the terms of the policy and as Plaintiffs cannot prove any unfair or deceptive conduct.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving part "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[10] In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[11] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[12] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[13] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[14] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[15]

Summary judgment must be entered "against a party who fails to make a showing sufficient

---

[10] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[11] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[12] *Celotex*, 477 U.S. at 324.

[13] *Matsushita*, 475 U.S. at 586.

[14] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[15] *Id*. at 251-52.

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[16]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[17]  Finally, the "judge may not make credibility determinations or weigh the evidence."[18]  Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[19]

## ANALYSIS

### I.  Plaintiff's Response in Opposition and Summary Judgment Affidavit

As an initial matter, the Court must evaluate which facts are truly not in dispute for purposes of this Motion.  In their response, Plaintiffs have failed to respond in the proper way to Defendant's asserted statement of undisputed facts.  To assist the Court "in ascertaining whether there are any material facts in dispute," Local Rule 56.1(b) provides

> Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either:
>
> (1) agreeing that the fact is undisputed;
> (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or
> (3) demonstrating that the fact is disputed.
>
> Each disputed fact must be supported by specific citation to the record. Such response shall be filed with any memorandum in response to the motion.  The response must be

---

[16] *Celotex*, 477 U.S. at 322.

[17] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[18] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[19] Fed. R. Civ. P. 56(a); *see also Celotex*, 477 U.S. at 322.

made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant. In either case, the nonmovant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant..[20]

The Court finds that Plaintiffs have failed to comply with the Local Rules and adequately dispute the material facts upon which Defendant has relied. Plaintiffs have not reproduced the facts using Defendant's corresponding numbering and have not cited to the record for the purpose of showing that the fact is disputed. Instead, Plaintiffs have simply stated that Defendant's asserted facts are either "Admitted" or "Denied." Pursuant to Local Rule 56.1(d), Plaintiffs' "[f]ailure to respond to a moving party's statement of material facts," especially those facts which Plaintiffs deny, indicates to the Court that "the asserted facts are not disputed for purposes of summary judgment."[21] Therefore, the Court deems Defendant's version of the facts to be undisputed at this stage of the proceedings.

Furthermore, each Plaintiff has filed a summary judgment affidavit (D.E. # 10-2, 10-8). Plaintiffs have also attached the affidavits of Wordlow's step-father Rodney Hughes (D.E. # 10-9)[22] and attorney Michael Campbell (D.E. # 10-10) who represents Plaintiffs. In its reply Defendant asks that the Court decline to consider the affidavits because they were not presented either as support for Plaintiffs' denials of Defendant's statement of facts or as Plaintiffs' own statement of additional

---

[20] Local Rule 56.1(b).

[21] Local Rule 56.1(d). *See also* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion.").

[22] In his affidavit, Mr. Hughes identifies himself as Ms. Wordlow's step-father; however, Wordlow in her affidavit refers to Hughes in one instance as her step-father and in another as her father-in-law.

facts. Local Rule 56.1(b) permits a non-moving party to include in its response "a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried."[23]   Much like a moving party's statement of undisputed facts, the non-moving's additional facts must "be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute."[24]  Whether Plaintiffs' submitted the affidavits to dispute Defendant's statements of fact or to offer their own statement of additional facts, Plaintiffs' method of simply attaching affidavits to its response brief does not assist the Court in ascertaining what material facts are not in dispute. Plaintiffs' approach has also denied Defendant the opportunity to offer evidence in response to the facts asserted in the affidavits.  For these reasons, Plaintiffs' method is disfavored.

Despite counsel's failure to comply with the Local Rules, the Court will consider the affidavits here.  Rule 56(c)(3) of the Federal Rules of Civil Procedure gives the Court discretion to "consider other materials in the record" even when the materials are not cited on summary judgment.[25]  Upon review of the affidavits, the Court is not persuaded that the facts contained in the affidavits create any question of material fact that are relevant to the Court's analysis of the legal issues presented.  The affidavits simply provide Plaintiffs' view of how Defendant, and in particular Thomas, handled their insurance claim.  Under the circumstances, the Court concludes that it is appropriate to consider the affidavits in reaching the merits of Defendant's Motion.

## II.  Fraud/Fraudulent Misrepresentation

---

[23] Local Rule 56.1(b).

[24] *Id.*

[25] Fed. R. Civ. P. 56(c)(3).

Plaintiffs have alleged fraud, pleading that Defendant through Thomas made false misrepresentations that led to the denial of Plaintiffs' insurance claim. The parties do not dispute that Tennessee law applies to Plaintiffs' claims. In order to prove a claim based on fraud or fraudulent misrepresentation under Tennessee law, a plaintiff must show that (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented material fact; and (6) plaintiff suffered damage as a result of the misrepresentation.[26] According to Plaintiffs' brief, which is not very clear on this point, their fraud claim is based on Thomas's apparently inconsistent statements about the deadline for Plaintiffs to complete their claim paperwork. Plaintiffs also allege that Thomas's statement to Plaintiffs that he did not need additional documentation for their claim constituted a misrepresentation. Under either theory, the Court holds that Defendant is entitled to judgment as a matter of law.[27]

The Court holds that Plaintiffs have failed to offer evidence from which a reasonable juror could find that Plaintiffs reasonably relied to their detriment on any representation about the deadline for completing the claim paperwork Plaintiffs have produced a letter dated October 28, 2009, and addressed by Thomas to Plaintiffs, in which Thomas stated, "You were provided [sic] Personal Property Inventory to complete and return with supporting documentation in order to substantiate your claim. To date the forms have not been received. We are sending under seperate [sic] letter

---

[26] *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008) (citations omitted).

[27] The Court would note that neither of these theories is stated with any specificity in the pleadings.

11

the same forms along with a Sworn Statement in Proof of Loss which must be completed within 60 days."[28] The separate letter quoted the policy provisions which required the insured to complete "an inventory of damaged or stolen property" including "all bills, receipts, and related documents that substantiate the figures in the inventory."[29] The letter further cited the policy's requirement that the insured submit the signed, sworn proof of loss within 60 days after the occurrence.[30]

Plaintiff has produced another letter dated February 5, 2010, addressed by Thomas to Plaintiffs in which Thomas stated that he still had not received the forms and documentation and that if he did not receive them by April 5, 2010, he would assume that Plaintiffs were not presenting a claim and close the file.[31] Then on February 10, 2010, Thomas addressed another letter to Plaintiffs stating that he had received a telephone call from Plaintiffs and advised Plaintiffs to disregard his prior letter, presumably the letter dated February 5, 2010.[32] The letter went on to state that Plaintiffs had "one year from the date of loss to submit the completed forms."[33] Plaintiffs submitted their completed forms with documentation on March 2, 2010.[34]

Viewing this evidence in the light most favorable to Plaintiffs, Thomas gave Plaintiffs two

---

[28] Pl.'s Resp., ex. 11 (D.E. # 10-11).

[29] *Id.*

[30] *Id.*

[31] Pl.'s Resp. ex. 3 (D.E. # 10-3).

[32] Pl.'s Resp. ex. 4 (D.E. # 10-4). Plaintiff Wordlow's affidavit refers to the fact that Plaintiffs' daughter was experiencing serious health issues that required hospitalization during the same time as the claim process was underway. Wordlow Aff. 1 (D.E. # 10-2).

[33] Pl.'s Resp. ex. 4 (D.E. # 10-4).

[34] Wordlow Aff. 2.

different deadlines for completing the documentation for their claim. However, Plaintiffs have failed to adduce any evidence that Thomas's statements amounted to misrepresentations, that is, that Thomas made a false statement knowingly or without belief in its truth or recklessly. There is evidence that Plaintiffs telephoned Defendant's hotline shortly after the loss occurred and were informed that they had one year to file their claim.[35] At the same time, the language of the policy clearly provides that the insured must complete its proof of loss documentation within 60 days of the loss. Based on this evidence, no reasonable juror could find that Thomas's letters advising Plaintiffs of the 60-day deadline were false statements of fact.

Moreover, the Court finds that Plaintiffs have no evidence that they relied on any alleged misrepresentation to their detriment. In other words, Plaintiffs have not shown that Defendant did not pay the full amount of their claim because of a missed deadline or the inconsistent information Thomas provided. According to Plaintiffs, Thomas notified them in the February 10, 2010 letter that they had one year to complete their claim. Plaintiffs actually submitted their inventory form and documentation on March 2, 2010. Defendant has asserted that it did not pay the full amount of the claim because Plaintiffs could not produce sufficient documentation to substantiate all of their losses. In the absence of any proof of reliance, the Court holds that Defendant is entitled to summary judgment as to this theory.

Likewise, Plaintiffs have failed to show that they suffered some damage in reliance on Thomas's comments that "he had everything." The only evidence Plaintiffs have adduced in support of Thomas's statement is the affidavit of Plaintiff Wordlow's step-father, Rodney Hughes.

---

[35] Wordlow Aff. 1.

According to Hughes, he was acting as his step-daughter's agent during the process and that Thomas told him on several occasions that "he had everything" as far as the claim paperwork.[36] The affidavit does not state when these representations occurred. Accepting as true the evidence that Thomas informed Plaintiffs that "he had everything," the Court holds that other than the conclusory legal argument set out in their brief, Plaintiffs have failed to demonstrate that they reasonably relied on this statement to Hughes or that the statement resulted in the denial of their claim or caused their damages. The evidence shows that Plaintiffs submitted their inventory form on March 2, 2010, six months after the theft loss. There is also evidence that on March 25, 2010, Thomas requested a copy of Plaintiffs' marriage license,[37] informed Plaintiffs that he had received their personal property inventory form, and notified them that any further documentation should be submitted within 30 days. Defendant also examined Plaintiffs under oath on May 11, 2010, and asked Plaintiffs to produce additional documentation at that time, which Plaintiffs did not do. Thereafter, Defendant made a payment of $3,057.26 on July 8, 2010. Even after that payment, there is evidence that Defendant continued to discuss the need for documentation until December 21, 2010.[38] This evidence underscores the point that Defendant continued to request documentation from Plaintiffs up until July 2010 when Defendant made the payment. Plaintiffs failed to provide any additional information. In the final analysis, Plaintiffs submitted their Personal Property Inventory, seeking

---

[36] Hughes Aff. 1 (D.E. # 10-9).

[37] Wordlow Aff. 2.

[38] Plaintiffs deny this statement but have failed to attach any evidentiary support to demonstrate how the fact is in dispute for purposes of summary judgment. Defendant has produced the Thomas affidavit as well as a letter Thomas addressed to counsel for Plaintiffs on December 21, 2010, in which Thomas refers to his last conversation with Plaintiffs' attorney on November 23, 2010. As a result, the Court finds no evidentiary basis to dispute this fact.

recovery for goods totaling over $25,000 in value.[39]   And yet Plaintiffs attached supporting

documentation, largely in the form of receipts, to substantiate only $3,000 worth of the personal

items.   Plaintiffs have not shown that but for Thomas's statement to Hughes that "he had

everything," Plaintiffs could have actually produced more documentation for their claim or that the

items Defendant declined to pay for were otherwise covered under the policy.[40]   Based on the

evidence before the Court, Plaintiffs have failed to show that genuine issues exist as to their

reasonable reliance on these statements or that the statements resulted in their damages.   Therefore,

Defendant's Motion is **GRANTED** as to Plaintiffs' claims for fraud.

## III.  Bad Faith

Plaintiffs argue that Defendant through its agent Thomas acted in bad faith.  Plaintiffs point

to evidence that Thomas questioned how they were able to afford the personal property they claim

was stolen.  Plaintiffs further allege that Thomas failed to keep appointments with them throughout

the claims process.  Tennessee law provides a statutory penalty where an insurance company denies

a claim in bad faith.  Tennessee Code Annotated § 56–7–105 states

> The insurance companies . . . doing an insurance business . . . in this state, in all cases
> when a loss occurs and they refuse to pay the loss within (60) sixty days after a
> demand has been made by the holder of the policy or . . . on which the loss occurred,
> shall be liable to pay the holder of the policy . . ., in addition to the loss and interest
> thereon, a sum not exceeding twenty-five percent (25%) on the liability for the loss . .

---

[39] Pl.'s Resp., ex. 5 (D.E. # 10-5).

[40] Plaintiffs have referred to possible meetings arranged with Thomas at a Lowe's home improvement store, apparently for the purpose of identifying items Plaintiffs had listed in their property inventory and establishing what the items cost.  These meetings were cancelled for unexplained reasons.

Although the Tennessee Supreme Court has not addressed the issue, the Tennessee Court of Appeals has held that formal demand for payment is a prerequisite for seeking the statutory penalty in a judicial proceeding.[42]  The Tennessee Court of Appeals has further concluded that it is not sufficient for an insured to simply complete all of the claim forms required by the insurer because the insurer is "entitled to notice of the claim for bad faith and a period in which to reflect upon the consequences of its failure to pay."[43]  In the case at bar, Plaintiffs argue that they have made a valid claim and that Defendant has denied it.  Plaintiffs have produced no evidence of making a formal demand for payment that would satisfy the prerequisites for bringing a judicial complaint for bad faith.  Additionally, Plaintiffs have not shown why their claim was due and payable, as required by the statute.  Therefore, the Court holds that Defendant is entitled to summary judgment as to this claim.

## IV.  Estoppel

Under the caption "Estoppel," the Complaint alleges that Defendant has knowingly accepted Plaintiffs' premiums for insurance coverage and has nevertheless denied coverage and refused payment for Plaintiffs' losses.  In their response brief, Plaintiffs argue that they have adduced evidence of two kinds in support of a promissory estoppel theory: their insurance contract with Defendant and the statements Thomas made to Hughes that "he had everything."  Viewing the record

---

[41] Tenn. Code Ann. § 56–7–105.

[42] *See PacTech, Inc. v. Auto-Owners Ins. Co.*, 292 S.W.3d 1, 9 (Tenn. Ct. App. 2008) (citing *Ginn v. Am. Heritage Life Ins. Co.,* 173 S.W.3d 433 (Tenn. Ct. App. 2004)).

[43] *Id.* (quoting *Walker v. Tenn. Farmers Mut. Ins. Co.,* 568 S.W.2d 103, 106 (Tenn. Ct. App. 1977)).

in the light most favorable to Plaintiffs, however, the Court holds that Plaintiffs cannot make out their claim for promissory estoppel.

The Tennessee Supreme Court has defined promissory estoppel as "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance."[44]  The Tennessee court has added that the promise "is binding if injustice can be avoided only by enforcement of the promise."[45]  The court in *Alden* defined the following limits of the theory: "(1) the detriment suffered in reliance must be substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance must have been foreseeable by the promisor; (3) the promisee must have acted reasonably in justifiable reliance on the promise as made."[46]  The Sixth Circuit has noted that Tennessee "does not liberally apply the doctrine and limits its application to 'exceptional cases.'"[47] Furthermore, "[p]romissory estoppel is an alternative theory to recovery on an express contract."[48]  Where two parties have a contract "and merely dispute its terms, scope or effect, one party cannot obtain recovery based upon promissory estoppel."[49]  In other words, "[o]nce an express contract is found, therefore, the

---

[44] *Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn. 1982) (quoting Restatement of Contracts § 90).

[45] *Id.*

[46] *Id.* (quoting Simpson, *Law of Contracts* § 61 (2d ed. 1965)).

[47] *Sparton Tech., Inc. v. Util-Link, LLC*, 248 F. App'x 684, 689–90 (6th Cir. 2007) (quoting *Barnes & Robinson Co., Inc. v. OneSource Facility Servs., Inc.,* 195 S.W.3d 637 (Tenn. Ct. App. 2006)).

[48] *Operations Mgmt. Int'l, Inc. v. Tengasco, Inc.,* 35 F. Supp. 2d 1052 (E.D. Tenn.1999).

[49] *Sparton Tech.*, 248 F. App'x at 690 (citations omitted).

alternative claim of promissory estoppel becomes moot."[50]

The Court holds that the claim for promissory estoppel is moot in this case. The parties do not dispute that they had a contract for insurance that applied to Plaintiffs' losses of personal property due to theft. The parties do, perhaps, disagree over the terms, scope or effect of the insurance contract. Nevertheless, based on the existence of an express contract between the parties, the Court holds that Plaintiffs cannot establish their claim for promissory estoppel. As for Thomas's statements, Plaintiffs have not adduced evidence that Thomas's statements amounted to a promise, let alone a promise to pay the full amount of the losses Plaintiffs sought. Therefore, Defendant's Motion is **GRANTED** as to this claim.

## V. Tennessee Consumer Protection Act

Finally, Plaintiffs assert that Defendant's conduct in the claims process violated the TCPA. In order to recover under the TCPA, a plaintiff must demonstrate "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated.'"[51] The TCPA defines specific unfair or deceptive acts or practices and includes a "catch-all" provision, which prohibits "engaging in any other act or practice which is deceptive to the consumer or to any other person."[52] Although the TCPA "does not define the terms 'unfair' or 'deceptive,' the Tennessee Supreme Court has

---

[50] *Id.*

[51] *Cloud Nine, LLC v. Whaley,* 650 F. Supp. 2d 789, 797–98 (E.D. Tenn. 2009) (quoting *Tucker v. Sierra Builders,* 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005)).

[52] Tenn. Code Ann. § 47-18-104(b)(27).

recognized that a deceptive act or practice is a material representation, practice or omission likely to mislead a reasonable consumer."[53] Furthermore, the Tennessee Supreme Court has held that whether a particular act is unfair or deceptive is a question of fact.[54] The TCPA is remedial in nature and should "be construed to effectuate [its] purposes and intent."[55]

The Court holds that Defendant is entitled to judgment as a matter of law on Plaintiffs' TCPA claim. Plaintiffs' brief explains that their TCPA claim is based on Defendant's denial of their claim as well as the conduct of Thomas. With respect to the denial of their claim, Plaintiffs apparently rely on the TCPA's "catch-all" provision.[56] The Tennessee Supreme Court has held that an insurer's refusal to pay a claim is not unfair or deceptive where there is no evidence that the insurer attempted to violate the terms of the policy, deceive the insured about the terms of the policy, or otherwise act unfairly.[57] Based on this holding, federal courts applying Tennessee law have consistently ruled that the mere denial of an insurance claim, absent any deceptive, misleading, or unfair act, does not

---

[53] *Whaley,* 650 F. Supp. 2d at 796 (citing *Ganzevoort v. Russell,* 949 S.W.2d 293, 299 (Tenn. 1997)).

[54] *Fayne v. Vincent,* 301 S.W.3d 162, 170 (Tenn. 2009).

[55] *Killingsworth v. Ted Russell Ford, Inc.*, 205 S.W.3d 406, 409 (Tenn. 2006) (quoting Tenn. Code Ann. § 47–18–115; § 47–18–102(2) (providing that the TCPA shall be interpreted "liberally" for the purpose of protecting "consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state")).

[56] Effective October 1, 2011, the TCPA's "catch-all" provision was amended to vest enforcement of that paragraph exclusively with the Attorney General for the state of Tennessee. *See* Tenn. Code Ann. § 47–18–104.

[57] *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 926 (Tenn. 1998)

violate the TCPA.[58]  Here Plaintiffs have not adduced evidence that Defendant acted unfairly or deceptively in paying only the portion of Plaintiffs' claim for property Plaintiffs could document. Plaintiffs have not shown that by requiring receipts or other proof of ownership, Defendant violated the terms of the policy or deceived Plaintiffs about the terms of the policy.   There is no proof that Defendant required Plaintiffs to produce documentation which it would not have required from other policyholders or which went beyond the normal procedures for investigating similar claims. Therefore, the Court concludes that Defendant is entitled to summary judgment on Plaintiffs' TCPA claim for the denial of their insurance claim.

As for Plaintiffs' theory that Thomas's conduct violated the TCPA, the Court also holds that Plaintiff has failed to prove that Thomas acted unfairly or deceptively and that Plaintiffs suffered an ascertainable loss as a result of such conduct.  Plaintiffs state that Thomas "spoke with Plaintiff Wordlow concerning the health of her child"[59] and "denied the claim" only to re-open it later. Plaintiffs also assert that Thomas failed to keep appointments with Plaintiffs and gave inconsistent information about the deadline for Plaintiffs to submit their claim forms and documentation. Plaintiffs argue that Thomas's acts resulted in emotional distress to Plaintiffs and that his failure to conduct himself in a professional manner violated the TCPA.

Viewing their summary judgment affidavits in the light most favorable to Plaintiffs, it is clear

---

[58] *See Fulton Bellows, LLC v. Federal Ins. Co.*, 662 F. Supp. 2d 976 (E.D. Tenn. 2009) (collecting cases).  Defendant stresses that Plaintiffs' claim was never denied.  Whether Defendant actually "denied" the claim or not, it is undisputed that Defendant has refused to pay the full amount of loss Plaintiff claimed.

[59] Plaintiff Legrone avers in his affidavit that Thomas said to Wordlow that "this claim is more important than our child."  Legrone Aff. 1 (D.E. # 10-8).  Wordlow did not mention this statement in her own affidavit.

that Thomas offended Plaintiffs by behaving in what Plaintiffs believed was an insensitive and unprofessional way. However, Plaintiffs have failed demonstrate how Thomas deceived them or how that deception led to their losses. As a result the Court holds that Plaintiffs have not shown how Thomas's conduct violated the TCPA. At most Plaintiffs have shown that Thomas expressed skepticism about the amount of Plaintiffs' claimed losses and about how Plaintiffs were able to afford all of the items they claimed were stolen. The Court finds that this conduct, though perhaps offensive, does not amount to a violation of the TCPA. Instead, Thomas's acts were consistent with his suspicion about the amount and extent of Plaintiffs' theft losses.[60] Nor have Plaintiffs shown how they were misled by Thomas's other acts like cancelling meetings with Plaintiffs or giving Plaintiffs different deadlines for submitting their paperwork.[61] Therefore, Defendant is entitled to judgment as a matter of law as to Plaintiffs' TCPA claims.

## CONCLUSION

The Court holds that Plaintiffs have failed to adduce evidence from which a reasonable juror could find Defendant liable under Plaintiffs' theories for fraud/fraudulent misrepresentation, bad faith, estoppel and the TCPA. Therefore, Defendant's Motion for Partial Summary Judgment is **GRANTED** as to these claims.

---

[60] *See Myint*, 970 S.W.2d at 926 (holding that insurer did not violate TCPA simply by denying claim for fire damage on suspicion of circumstances suggesting arson).

[61] *See Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*, 129 F. App'x 955, 960–61 (6th Cir. 2005) (holding that an insurer's failure to return insured's phone calls or clerical mistakes during claims process did not violate the TCPA).

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: March 25th, 2012.